IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11CV173

| | |
|---|---|
| **LEWIS W. STEPHENS,** | ) |
| Plaintiff, | ) |
| v. | ) ORDER |
| **NEAL'S PALLET COMPANY, INC.,** | ) |
| Defendant. | ) |

This matter is before the Court upon Defendant's Motion for Summary Judgment. For the following reasons, the Defendant's Motion is **GRANTED**.

## I. FACTUAL BACKGROUND

Plaintiff Lewis Stephens ("Stephens") filed this lawsuit against his former employer, Neal's Pallet Company, Inc., alleging racial discrimination under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, retaliation for complaints about discrimination under Title VII and the ADEA, and wrongful termination in violation of North Carolina public policy, codified at N.C. Gen. Stat. § 143-422.2.

1

Defendant is a North Carolina corporation based in Charlotte with locations on Wilkinson Boulevard and Terminal Street. Neal's Pallet is owned by Neal Sparrow and managed by his son Danny Sparrow. As of January 1, 2009, Neal's Pallet employed thirty-four workers. Plaintiff worked for Defendant as an at-will employee from December 3, 2003, when he was sixty-seven, until he was terminated on August 28, 2009, when he was seventy-three. Plaintiff held the job title of Plant Manager at the Terminal Street facility. He managed other employees and assisted in hiring and firing workers. Plaintiff reported to Danny Sparrow.

While Plaintiff was the first African-American employee at the Terminal Street facility, he was not Defendant's first black employee generally. During the six years Plaintiff worked for Defendant, seven African-American employees were fired or quit and twelve white or Hispanic workers were hired. Plaintiff alleges that during this period Danny Sparrow made derogatory comments about African-American and older employees. Plaintiff also alleges that he complained to Danny Sparrow about discriminatory treatment, including terminations he felt were motivated by race or age.

In late August 2009, Neal and Danny Sparrow allege that they received a phone call from an anonymous informant. Neal and Danny agreed to meet the informant, and he told the Sparrows that he was involved in a scheme with Plaintiff and several other individuals to steal pallets from Defendant and sell them to another company. Neal and Danny Sparrow claim to have initially disbelieved the informant. A few days later, Danny Sparrow discovered that a trailer loaded with pallets was missing from the Terminal Street facility. The Sparrows confronted Stephens and told him he was being fired because they believed Plaintiff had stolen the trailer. Shortly thereafter, Danny Sparrow found Plaintiff's notepad listing names and telephone numbers, including several people the Sparrows believed were involved in the scheme

to steal from Defendant. Danny Sparrow called one of the names written on the notepad and inquired about the missing trailer. The trailer was found down the street from the company the next day.

On March 18, 2011, Plaintiff filed a Complaint against Defendant in North Carolina Superior Court. On April 8, 2011, Defendant timely removed the case to this Court.

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 states "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is material if it will "affect the outcome of the suit under governing law." *Id.* The moving party "bears the initial burden of demonstrating the absence of a genuine issue of material fact." *Bouchat v. Baltimore Ravens Football Club*, *Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). Once the moving party has carried its burden, the nonmoving party "must come forward and demonstrate that such an issue does, in fact, exist." *Id.* The court will view evidence "in the light most favorable to the nonmoving party." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1985).

## III. DISCUSSION

### A. Race and Age Discrimination

Title VII states that "[i]t shall be an unlawful employment practice for an employer . . . to . . . discharge any individual . . . because of such individual's race . . . . " 42 U.S.C.§ 2000e-

3

Case 3:11-cv-00173-GCM   Document 21   Filed 07/23/12   Page 3 of 13

2(a)(1). Plaintiffs can establish discrimination by showing that race was a "motivating factor" for an employment practice. *Id.* at § 2000e-2(m).

The ADEA states that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S. § 623. To establish age discrimination a plaintiff "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009).

Plaintiffs may prove employment discrimination by "two avenues of proof." *Hill v. Lockheed Martin*, 354 F.3d 277, 284 (4th Cir. 2004). Plaintiffs may provide direct evidence of discrimination, or demonstrate a prima facie case of discrimination under the framework developed in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). The Plaintiff herein proceeds under both avenues of proof, but fails to establish race or age based discrimination under either.

Plaintiff first alleges that the Defendant's discriminatory motives are evidenced by Danny Sparrow's racist remarks about his employees. Plaintiff asserts in his Affidavit that Danny Sparrow "expressed the view that African-Americans were prone to getting into trouble, lazy, not dependable, and prone to being involved in criminal activity." Danny Sparrow also allegedly "often suggested that African-American vendors of used pallets (that needed repairs) had likely stolen them and paid less for their pallets based on his suspicions of them." This evidence standing alone is not enough to prove discrimination because it does not easily lead to the inference that Defendant was motivated by racial animus at the time he decided to terminate Plaintiff. *See Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 608 (4th Cir. 1999) ("[T]o prove discriminatory animus, the derogatory remark cannot be stray or isolated, and unless the remarks upon which plaintiff relies were related to the employment decision in question, they

4

cannot be evidence of discrimination.") (citations omitted), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003). Plaintiff has not shown a nexus between the alleged remarks and his termination, and thus it is far from clear that even if Danny Sparrow did make those remarks, that he harbored discriminatory motives at the time he terminated Plaintiff.

Moreover, Plaintiff's sworn deposition testimony seriously weakens these allegations, as it provides clarification as to the frequency and context of the remarks. Where a deposition and affidavit are inconsistent, the Court relies on the deposition. *See Rohrbough v. Wyeth Laboratories*, Inc., 916 F.2d 970, 975 (4th Cir. 1990) (quoting *Barwick v. Celotex Corp.,* 736 F.2d 946, 960 (4th Cir.1984)) ("[A] genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct."). In his deposition, Plaintiff recalled that Danny Sparrow complained about "young black guys" being "lazy and smoking dope" some "two or three times." Plaintiff acknowledged that Danny Sparrow made one of these remarks in the context of firing an African-American employee after the employee was "caught with marijuana." Plaintiff also acknowledged that Defendant did not denigrate African-American pallet vendors generally, but "just one or two in particular." These were the only remarks Plaintiff remembered Defendant making that were "derogatory about someone's race." Furthermore, Plaintiff "never heard the Company's owner or general manager say anything to him about his race nor anything derogatory regarding his skin color." Thus the evidence shows that Danny Sparrow made two or three racially charged remarks, that one remark was made after an African-American employee was caught with marijuana, and that none of these remarks shared a nexus with Plaintiff's dismissal. This evidence is simply insufficient to show that Plaintiff was fired for discriminatory reasons.

Plaintiff also alleges that Defendant did not typically hire African-Americans, and fired

seven African-American employees "for no real reason." However, he fails to support this allegation with specific evidence. The depositions and affidavits show that, at most, three African-American employees (William Fisher, Kelvin Fisher, and Lanny Melton) were terminated without cause. Plaintiff does not introduce evidence showing the total number of workers who were fired during this period, so the Court cannot infer that a disproportionate number of African Americans were terminated. Without more, this evidence does not show that race was a motivating factor in Defendant's decision to terminate Plaintiff.

In support of his age discrimination claim, Plaintiff alleges in his Affidavit that Danny Sparrow "expressed his concerns that older workers might be slower, particularly on newer, more modern equipment." Again, the record does not support this allegation. Plaintiff testified in his deposition that Danny Sparrow asked about job applicants' ages only to ascertain if they were "able to perform manual labor." Plaintiff also alleges that Defendant "terminated older employees for alleged lack of productivity, despite there being no real lack of productivity. . . . [I]n the same time frame, Defendant was hiring much younger employees for the same positions." The record shows that Defendant fired three employees over the age of forty (Lanny Melton, Bernardo Salas, and William Fisher) between 2003 and 2009. During the same period, fourteen employees over forty, or roughly forty percent of Defendant's workforce, continued to work for Defendant. Plaintiff was himself hired at the age of sixty-six or sixty-seven. Given this context, Danny Sparrow's inquiries into job applicants' ability to perform manual labor and his termination of three employees who were older than forty does not suggest that, but for his age, Plaintiff would have kept his job at Neal's Pallet.

In addition to his purported direct evidence of discrimination, Plaintiff also attempts to prove race and age discrimination under the burden-shifting *McDonnell Douglas* framework.

6

This framework has three stages. In the first stage a plaintiff must demonstrate by a preponderance of the evidence a prima facie case of discrimination. *McDonnell Douglas,* 411 U.S. at 793. In the second stage the defendant has the burden of "rebut[ting] the presumption of discrimination by producing evidence that the plaintiff" was adversely affected "for a legitimate, nondiscriminatory reason." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). In the final stage the plaintiff has "the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision" but was rather a pretext for discrimination. *Id*.

To establish a prima facie case under Title VII and the ADEA, a plaintiff must show by a preponderance of the evidence that "(1) he is a member of a protected class; (2) he suffered adverse employment action; (3) he was performing his job duties at a level that met his employer's legitimate expectations at the time of the adverse employment actions; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Hill*, 354 F.3d at 285; *See McDonnell Douglas*, 411 U.S. at 801. Defendant does not contest that Plaintiff has met the first and second prongs of a prima facie case.

Defendant argues that Stephens has not satisfied Defendant's legitimate expectations because "there is unrefuted evidence that [Defendant] believed Stephens was involved in the theft of a trailer from the company"—which is also Defendant's stated reason for firing Plaintiff. In *Warch v. Ohio Cas. Insurance Co.*, the court held that "no impermeable barrier . . . prevents the employer's use of [evidence that employee did not meet legitimate expectations] at different stages of the *McDonnell Douglas* framework," particularly when "there is no one 'event' that 'sparked the termination.'" 435 F.3d 510, 516 (4th Cir. 2006) (citing *Cline v. Catholic Diocese of Toledo,* 206 F.3d 651, 663 (6th Cir. 2000)). Unlike *Warch*, in which the defendant terminated an older employee who had sustained consistently poor performance reviews, Stephens'

7

dismissal is linked to a single event: the missing trailer. Also, as the *Warch* court recognized, "courts might apply the 'expectations' or 'qualification' prong of the prima facie too strictly in some cases, resulting in the premature dismissal of potentially meritorious claims of unlawful discrimination." 435 F.3d at 516. The Court finds it inappropriate to consider the stolen trailer explanation at this stage of the analysis, particularly as the "burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253.

Defendant also asserts that the fourth prong of the prima facie case has not been met because Plaintiff's position was filled by Plaintiff's twenty-five year-old Hispanic assistant. It is unclear if Defendant relies on the fact that Plaintiff was replaced by a Hispanic worker; if so, the argument fails. *See Miles v. Dell, Inc.*, 429 F.3d 480, 486 (4th Cir. 2005) ("It is thus clear that the law in this circuit is that, as a general rule, Title VII plaintiffs must show that they were replaced by someone outside *their* protected class in order to make out a prima facie case.") (emphasis added). Plaintiff therefore meets the fourth prong of the prima facie case.

While the Court finds that Stephens has met his burden of establishing a prima facie case, Defendant has likewise met its burden of producing a legitimate, nondiscriminatory reason for firing Plaintiff. "The defendant need not persuade the court that it was actually motivated by the proffered reasons . . . . It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine*, 450 U.S. at 253. Defendant states that Plaintiff was fired because Neal and Danny Sparrow believed Plaintiff "was involved with the theft of one of the trailers."[1] Defendant proffered this explanation in response to Plaintiff's

---

[1] In its Memorandum of Law in Support of the Motion for Summary Judgment, Defendant also pointed to Plaintiff's absenteeism and low productivity. Defendant did not raise these issues in its Reply to Plaintiff's Response, and now points solely to the theft of the trailer as the cause for Plaintiff's dismissal.

8

interrogatories, and again during depositions. Furthermore, Plaintiff's deposition and affidavit support this explanation. Thus Defendant has met the burden of producing a legitimate explanation for terminating Plaintiff**.**

The final step of the *McDonnell Douglas* framework requires a plaintiff to rebut an employer's proffered explanation, and this can be accomplished if "the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146 (2000); *See Hill*, 354 F.3d at 285; *Holland v. Washington Homes,* 487 F.3d 208, 214 (4th Cir. 2007). The court in *Reeves* was quick to caution that "whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. These include . . . the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case . . . ." 530 U.S. at 148.

Plaintiff has not shown that Defendant's proffered explanation is "unworthy of credence" or "offer[ed] other forms of circumstantial evidence sufficiently probative of intentional discrimination." *Burdine*, 450 U.S. at 257; *See Dugan v. Albermarle County School Bd*, 293 F.3d 716, 721 (4th Cir. 2002). Plaintiff must do more than show a genuine issue of fact exists as to whether he stole the trailer—he must show that there are genuine issues of fact regarding Neal and Danny Sparrow's belief that Plaintiff was involved in a scheme to steal from Defendant. Plaintiff asserts that "there are numerous material issues of fact" related to Defendant's stated reason for firing Plaintiff, because: (1) neither Neal nor Danny Sparrow called the police immediately after being contacted by an informant who claimed that Plaintiff was involved in a scheme to steal from Defendant; (2) having recovered the trailer one day after it was reported stolen, neither Neal nor Danny Sparrow informed the police that the trailer had been found,

despite the police investigator's "numerous attempts" to contact Defendant; (3) neither Neal nor Danny Sparrow reported Plaintiff's suspected involvement in the theft to the police; and (4) Neal and Danny Sparrow's suspicions were based on a conversation with an unidentified and untrustworthy third party. Without more, these so-called "oddities" do not show that Defendant's managers did not genuinely believe Plaintiff stole the trailer; rather, they are "minor discrepancies that do not cast doubt on the explanation's validity." *Hux v. City of Newport News, Va.*, 451 F.3d 311, 315 (4th Cir. 2006).

The Sparrows' failure to report Plaintiff's suspected involvement to the authorities does not prove Defendant acted on a "hidden motive." *Holland*, 487 F.3d at 216. Danny Sparrow stated that he "didn't ask [the police] to investigate the theft" because he "just wanted the trailer back" and "at [that] point" he was "only concerned in getting the trailer back." Again, Danny Sparrow said he was concerned that "once we confronted Lewis, he was going to contact these guys and say, listen, we've got a problem, we've been busted. And I was afraid we wasn't going to get that trailer back." He also said that he "did not recall [a police officer] asking about suspects."

Plaintiff has not offered a different explanation, and "[i]t takes two sides to create a conflict." *Id.* (noting that "[t]he only reason we have adopted [the defendant's] explanation . . . is because [plaintiff] has offered no contrary explanation."). To avoid summary judgment, evidence he must do more than cast "metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Plaintiff cannot simply deny that he stole from Defendant, but fail to provide specific evidence that Danny Sparrow did not believe Plaintiff stole from Defendant.

Finally, Plaintiff argues that Defendant's proffered explanation is pretextual because Neal and Danny Sparrow relied on an unidentified informant's tip. Plaintiff characterizes this

10

explanation as "put[ting] forth an alleged hearsay statement of an unidentified person to try to show criminal activity." Defendant, however, has not sought to admit the informant's statement as evidence. Rather, Defendant recounts meeting with the informant to show how Neal and Danny Sparrow came to believe that Plaintiff stole the trailer. Finally, the record shows that Danny Sparrow called another individual the informant named as a thief, and whose name was found on Plaintiff's notepad, to ask that the trailer be returned. This suggests that the Sparrows did believe the informant.

The evidence taken in the light most favorable to Plaintiff does not lead to the inference that Defendant's explanation was a pretext for race or age discrimination. Plaintiff has not "directly . . .persuad[ed] the court that a discriminatory reason more likely motivated the employer or indirectly . . . show[ed] that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 257.

### B. Retaliation

Title VII prohibits an employer from retaliating against employees who "opposed any practice made an unlawful employment practice" under the Civil Rights Act. 42 U.S.C.A. § 2000e-3(a). To prove retaliation, a plaintiff must show that (1) while employed the plaintiff engaged in a protected activity (for example, complaining about discriminatory practices); (2) that the employee suffered an adverse employment action; and (3) that the employee's opposition to discrimination was causally linked to the adverse action. *Causey v. Balog*, 162 F.3d 795, 803 (4th Cir. 1998). A plaintiff can prove causation if the opposition occurred "very close" in time to the protected activity. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

Plaintiff alleges that he complained to Danny Sparrow twice, in 2006 and in 2008, about what he believed to be discriminatory terminations of other employees. However, in Plaintiff's deposition, Plaintiff admits that he cannot remember the date or content of the complaints. Even if the Court were to accept Plaintiff's allegations, because the complaints were made at least eight months before Plaintiff was fired, they would be insufficiently proximate in time to Plaintiff's dismissal to establish causality. *See Id.* at 273-4 (recognizing lower courts' rulings that three and four month gaps are too remote in time to prove causality). Accordingly, Plaintiff has failed to raise a genuine issue of material fact regarding his retaliation claim.

### C. Wrongful Termination

The North Carolina Equal Employment Practices Act ("NCEEPA") protects "the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgment on account of race . . . [or] age . . . by employers which regularly employ 15 or more employees." N.C. Gen. Stat. § 143—422.2. However, the NCEEPA does not create a private cause of action, however. *See Smith v. First Union National Bank*, 332 F.3d 234, 247 (4th Cir. 2000) (recognizing that the NCEEPA is applied to common law wrongful discharge claims or in connection with other statutory remedies). Because Plaintiff has failed to raise a genuine issue of material fact regarding race or age discrimination, he cannot rely on the NCEEPA alone to avoid summary judgment.

For the foregoing reasons, the evidence viewed in the light most favorable to Plaintiff fails to demonstrate a genuine issue of material fact regarding discrimination against Plaintiff based on race, age, retaliation, or in violation of North Carolina public policy. Thus Defendant is entitled to judgment as a matter of law.

It is **THEREFORE ORDERED** that Defendant's Motion for Summary Judgment is hereby **GRANTED.**

Signed: July 23, 2012

Graham C. Mullen
United States District Judge